# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 1619 | **DATE** | 8/16/2001 |
| **CASE TITLE** | Norfolk Southern Railway Company vs. Gee Co., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants Chicago Flameproof and Wood Specialties Corp.'s, Vincent Mancini's, and Gee Company's joint motion for reconsideration, or, in the alternative, for certification for interlocutory appeal (Doc. 120-1, 2) is denied.

(11) ■ [For further detail see order attached to the original minute order.]

Number of notices: 5
Date docketed: AUG 20 2001
Date mailed notice: 8/17/2001

Document Number: 123

FILED FOR DOCKETING
01 AUG 17 PM 4: 55

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NORFOLK SOUTHERN RAILWAY )
COMPANY, )
 )
      Plaintiff, )
 )
      v. ) No. 98 C 1619
 )
GEE CO., CHICAGO FLAMEPROOF ) Judge Rebecca R. Pallmeyer
AND WOOD SPECIALTIES CORP., )
MAY WOOD INDUSTRIES, INC., )
JAMES W. GEE, a/k/a, JIM W. GEE, )
JOHN J. JANSSEN, and VICENT W. ) **DOCKETED**
MANCINI, )
 ) AUG 2 0 2001
      Defendants. )

## MEMORANDUM OPINION AND ORDER

On March 18, 1998, Norfolk Southern Railway Company ("Norfolk Southern") filed a ten-count complaint against Defendants Gee Company, James Gee. Sr., Chicago Flameproof and Wood Specialties Corp. ("CFW Specialties"), John Janssen, Vincent Mancini and Maywood Industries, Inc. The complaint asserted, *inter alia*, claims under the federal Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601, and the Illinois Environmental Protection Act, 415 ILCS 5/22.2, and sought recovery for environmental damage allegedly caused by Defendants to Plaintiff's property and an adjacent high school's athletic field.

In early February 2001, each Defendant moved for summary judgment on all of Plaintiff's claims as against them. On March 23, 2001, Plaintiff voluntarily dismissed John Janssen and Maywood Industries from all claims in the lawsuit with prejudice.

/23

On June 25, 2001, this court granted the remaining motions for summary judgment in part and denied them in part.[1] *See Norfolk Southern Ry. Co. v. Gee Co.*, No. 98 C 1619, 2001 WL 710116 (N.D. Ill. Jun. 25, 2001). On July 5, 2001, CFW Specialties, Mancini and Gee Co. filed a joint motion for reconsideration of the court's ruling denying summary judgment on Counts I, II, and III of Norfolk Southern's complaint (the "CERCLA counts"). In the alternative, Defendants asked the court to certify that ruling for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Defendants argue that the June 25 Order did not adequately consider the degree of Norfolk Southern's compliance with the public notice and comment (or "community relations") provisions of the National Contingency Plan ("NCP"). For reasons that follow, the court denies Defendants' joint motion.

Before evaluating the merits of the motion, however, the court notes some frustration concerning Defendants' focus on this issue at this stage. Neither CFW Specialties, Mancini, nor Gee Company mentioned the NCP in the memoranda supporting their respective motions for summary judgment. Instead, they chose to adopt Maywood Industries' memorandum as it applied to the CERCLA counts. The

---

[1] Specifically, in its June 25 ruling, the court (a) denied Gee Co.'s motion with respect to Counts I (CERCLA § 107(a)), II (CERCLA § 113(f)), VI (Indemnity) and VII (Waste) (b) granted Gee Co.'s motion with respect to Counts IV (IEPA § 22.2(f)) and X (Trespass); (c) granted James Gee, Sr.'s motion with respect to Counts I, II, and III (CERCLA § 113(g)(2)); (d) denied CFW Specialties' and Mancini's motions for summary judgment with respect to Counts I (CERCLA § 107(a)), II (CERCLA § 113(f)), III (CERCLA § 113(g)(2)), V (Breach of Lease) and VIII (Waste) as well as Gee Co.'s cross-claim for contribution under CERCLA § 113(f); (e) granted CFW Specialities' and Mancini's motions with respect to Count X (Trespass); and (f) granted CFW Specialties' motion as to any claim based on successor liability.

court is uncertain why, if Defendants believed this argument so compelling, they failed to devote a single sentence to the matter in their eight-page memorandum of law. Gee Company was represented by the same counsel who made the NCP argument on behalf of Maywood Industries; but this fact does not excuse Gee Co.'s own failure to highlight the issue for the court after Maywood Industries' dismissal from the lawsuit.

That aside, the Defendants are correct that "substantial compliance"[2] with the NCP is a prerequisite to CERCLA recovery, *see* 42 U.S.C. § 9607(a)(4)(B); *see also Nutrasweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 790 (7th Cir. 2000); *PMC Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 616 (7th Cir. 1998). This court explicitly acknowledged this on page 33 of its June 25 Order. Under NCP provisions, a proposed clean-up method in which costs will be incurred is to be submitted for public comment before it is implemented. *PMC*, 151 F.3d at 616 (citing 40 C.F.R. § 300.700(c)(6)). Section 300.700(c)(6) states as follows:

> Private parties undertaking response actions *should* provide an opportunity for public comment concerning the selection of the response action based on the provisions set out below, or based on substantially equivalent state and local requirements. The following provisions of this part regarding public participation are potentially applicable to private party response actions, with the exception of administrative record and information repository requirements stated therein:
> (i) Section 300.155 (on public information and community relations);
> (ii) Section 300.415(n) (on community relations during removal actions);
> (iii) Section 300.430(c) (on community relations during RI/FS) except paragraph (c)(5);

---

[2] The NCP, promulgated in 1985, was amended in 1990, *see Gussin Enters., Inc. v. Rockola*, No. 89 C 4742, 1993 WL 114643, at *5 (N.D. Ill. Apr. 13, 1993), so as to reduce the standard for compliance from "strict" to "substantial." *See Bedford Affiliates v. Sills*, 156 F.3d 416, 427 (2d Cir. 1998).

-3-

> (iv) Section 300.430(f)(2), (3), and (6) (on community relations during selection of remedy); and
> (v) Section 300.435(c) (on community relations during RD/RA and operation and maintenance).

40 C.F.R. § 300.700(c)(6) (emphasis added). Section 300.155, referred to in this section, states, in relevant part, that: "When an incident occurs, it is imperative to give the public prompt, accurate information on the nature of the incident and the actions underway to mitigate the damage. OSCs/RPMs and community relations personnel should ensure that all appropriate public and private interests are kept informed and that their concerns are considered throughout a response." 40 C.F.R. § 300.155(a). And Section 300.415(n), also referred to in Section 300.700(c)(6), states, in relevant part:

> In the case of all CERCLA removal actions taken pursuant to § 300.415 or CERCLA enforcement actions to compel removal response, a spokesperson shall be designated by the lead agency. The spokesperson shall inform the community of actions taken, respond to inquiries, and provide information concerning the release. All news releases or statements made by participating agencies shall be coordinated with the OSC/RPM. The spokesperson shall notify, at a minimum, immediately affected citizens, state and local officials, and, when appropriate, civil defense or emergency management agencies.

40 C.F.R. § 300.415(n)(1). According to the Seventh Circuit, the purpose of these public comment regulations is "to make sure that the remedial measures undertaken hopefully at the expense of someone else are not excessive or otherwise improvident." *PMC*, 151 F.3d at 616.

Parroting the arguments contained in Maywood Industries' summary judgment memorandum, the moving Defendants now argue that (1) because Norfolk Southern

-4-

did not engage in community relations as required by the NCP, its CERCLA claim is barred; and (2) the involvement of the Illinois Environmental Protection Agency (IEPA) does not constitute an adequate substitute for community relations sufficient to permit Norfolk Southern's three CERCLA claims to proceed.[3] The court addressed these issues, albeit briefly, in its June 25 Order. Order, at 27 n.12 & 33 n.13. In that Order, the court characterized Norfolk Southern's community relations effort as "lackluster," *id.*, noting that, despite recommendations otherwise from the IEPA, Norfolk Southern did not:

> (a) prepare a fact sheet for distribution to students, parents, neighbors, and staff or to St. Rita's; (b) notify local newspapers in advance of any restoration activities; (c) notify local officials, including aldermen, the mayor and emergency response personnel; (d) personally visit the residents located immediately north of the practice football field prior to performing any prolonged restoration activities; or (e) establish a local repository (e.g., library) at which all technical reports and fact sheets could be reviewed by interested parties.

*Id.*, at 27 n.12. Notwithstanding its criticism of Norfolk Southern's efforts, the court concluded in its June 25 Order that Norfolk Southern substantially complied with the NCP because the IEPA was involved in both the approval of Norfolk Southern's remediation plans and the execution of the remediation itself, and then supplied its

---

[3] The court notes that, even if the court were to accept the CFW Specialties Defendants' argument, it would only prevent Norfolk Southern's recovery of actual removal and remediation costs; all initial investigation and monitoring costs, for which Norfolk Southern has sought recovery, *see* Exhibit 33 to Norfolk Southern's Statement of Additional Uncontested Facts Pursuant to Local Rule, are recoverable irrespective of the NCP. *See American Nat. Bank and Trust Co. v. Harcros Chemicals, Inc.*, 997 F. Supp. 994, 1000 (N.D. Ill. 1998) (citing *Gache v. Town of Harrison*, 813 F. Supp. 1037, 1046 (S.D.N.Y.1993)).

final stamp of approval by way of two separate No Further Remediation (NFR) Letters. The court relied for support on *Nutrasweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 790 (7th Cir. 2000), a recent decision from the Seventh Circuit. The plaintiff in *Nutrasweet* sued a neighboring corporation and its president/principal shareholder under CERCLA, claiming that the defendants had improperly disposed of hazardous compounds which seeped onto and contaminated the plaintiff's property. Soon after the plaintiff discovered the contamination, it had retained an environmental consulting firm to investigate and plan the remediation of the site. *Id.*, at 780. The consulting firm did so and the plan was approved and then supervised by the IEPA. *Id.* The plaintiff cleaned up the property, was issued an NFR Letter, and brought suit under CERCLA, winning an award of clean-up costs against the defendants. *Id.*, at 781.

On appeal, the defendants argued, *inter alia*, that the plaintiff did not effectively clean up its property, and therefore violated the NCP. *Id.*, at 790-91. The Seventh Circuit determined that the defendants had waived the argument by not presenting it at summary judgment, but noted that, regardless, the plaintiff had satisfied the NCP because "the Illinois EPA approved [the plaintiff's] clean-up plan, . . . the agency monitored the progress of the remediation[, and the plaintiff] remediated the property until the Illinois EPA advised it that it could stop because [its] efforts had succeeded to the maximum extent possible." *Id.*, at 791.

Defendants, in this case, believe that this court interpreted *Nutrasweet* too broadly because that case "involved the issue whether the clean-up was sufficient to

eradicate the contamination, not whether IEPA approval was sufficient to satisfy the community relations requirement." Motion for Reconsideration, at 4. The court disagrees. The factual section of the *Nutrasweet* opinion did not mention any public notice or comment efforts on the part of the plaintiff, yet the Seventh Circuit did not qualify its conclusion that the IEPA's approval and involvement satisfied the NCP. The Defendants stress, and the court recognizes, that most, but not all, courts deciding this issue have come out the other way. *See* Defendants' Joint Motion, at 4-7 (citing *County Line Investment Co. v. Tinney*, 933 F.2d 1508, 1512 (10th Cir. 1991) (plaintiff's failure to provide public comment on remedial action barred CERCLA recovery despite the fact that plaintiff's clean-up plan was approved by the Oklahoma State Department of Health); *Waste Mgmt. of Alameda County, Inc. v. East Bay Regional Park Dist.*, 135 F. Supp. 2d 1071, 1102 (N.D. Cal. 2001) ("[T]he NCP is quite clear that its public participation standards are directed at participation by members of the general public and the surrounding community, not government bodies."); *Sherwin-Williams Co. v. City of Hamtramck*, 840 F. Supp. 470, 477 (E.D. Mich. 1993) ("[S]tate regulatory involvement in the remedial process is not a substitute for the public comment contemplated by section 300.700(c)(6).")).

Still other courts have reached conclusions similar to that outlined here, however. *See Bedford Affiliates v. Sills*, 156 F.3d 416, 427-28 (2d Cir. 1998); *Sherwin-Williams Co. v. Artra Group, Inc.*, 125 F. Supp. 2d 739, 752 (D. Md. 2001) ("At least one circuit has concluded that evidence of a state environmental agency's involvement with

approving cleanup plans and monitoring remediation progress was sufficient to satisfy the requirement of consistency with the NCP as a whole, and not merely with respect to the public participation requirements.") (citing *Nutrasweet*, 227 F.3d at 791); *American Color & Chem. Corp. v. Tenneco Polymers, Inc.*, 918 F. Supp. 945, 957 (D.S.C. 1995) ("This court . . . recognizes that governmental agencies charged with protection of the public interest may serve as substitutes for participation by individual members of the public, at least where the agency is actively involved in all aspects of the investigation, planning, and remediation of a release of a hazardous substance . . . ."). In *Bedford Affiliates*, for example, the Second Circuit found that "[w]here a state agency responsible for overseeing remediation of hazardous wastes gives comprehensive input, and the private parties involved act pursuant to those instructions, the state participation may fulfill the public participation requirements." *Bedford Affiliates*, 156 F.3d at 428. The court noted that "since . . . none of the parties to the action disputes the quality or cost of Bedford's cleanup efforts, to preclude its recovery solely because of the lack of public comment would ignore the equitable component that Congress and the EPA built into cleanup costs decisions." *Id.*, at 429. In *Union Pacific R.R. Co. v. Reilly Indus., Inc.*, 215 F.3d 830, 835 (8th Cir. 2000), the Eighth Circuit agreed that public participation may fulfill the public participation requirement, but found the case before it to be distinguishable from *Bedford Affiliates* because the defendant had consistently asserted in the litigation that the plaintiff incurred unnecessary response costs. *Id.*, at 838. Here, Defendants did not at any time

dispute the quality or cost of Norfolk Southern's actual clean-up efforts. To be sure, Defendants have suggested that Norfolk Southern did not act quickly enough once it determined that the relevant properties may have been contaminated. Any such delay, however, would not make the actual remedial measures "excessive or otherwise improvident." *PMC*, 151 F.3d at 616. If it is determined at trial that Norfolk Southern caused any contamination to the relevant properties during the alleged delay, its CERCLA recovery, if any, would likely be offset as a result of the Defendants' respective counterclaims for contribution.

In sum, the court reconfirms the finding in its June 25 Order: The Seventh Circuit has not yet decided the issue explicitly, but its *Nutrasweet* decision suggests strongly that government agency involvement, similar to that of the IEPA in this case, can provide an adequate substitute for public notice and comment. Where, as here, the defendant does not, at summary judgment, contest the costs incurred by the plaintiff, the case for substitution becomes even stronger. A result to the contrary "would ignore the equitable component that Congress and the EPA built into cleanup costs decisions." *Bedford Affiliates*, 156 F.3d at 429. Accordingly, the court denies Defendants' motion for reconsideration.

Finally, the court considers Defendants' alternative motion for certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). When deciding whether to grant such a motion, a district court should make the following inquiries: is there a question of law, is it controlling, is it contestable, and will its resolution speed up the litigation. *See Ahrenholz v. Board of Trustees of University of Illinois*, 219 F.3d 674, 675 (7th Cir.

2000). The decision here turns on the last of these four inquiries. Norfolk Southern argues that an interlocutory appeal will not speed up the litigation because, even if the CERCLA claims are dismissed, this court will retain diversity jurisdiction over Norfolk Southern's state law claims. The court agrees with this argument. The amount in controversy is clearly over $75,000, and there is complete diversity: Norfolk Southern is a Virginia corporation with its principal place of business in Virginia. Defendants CFW Specialties and Gee Company are not Virginia corporations and do not have their principal places of business in Virginia, and Defendants Vincent Mancini and James Gee, Sr. do not reside in Virginia. As Norfolk Southern points out, an interlocutory appeal would more likely slow down, as opposed to speed up, this litigation. Defendants' motion for leave to file an interlocutory appeal is denied.

## CONCLUSION

For the foregoing reasons, Defendants Chicago Flameproof and Wood Specialties Corp.'s, Vincent Mancini's, and Gee Company's joint motion for reconsideration or, in the alternative, for certification for interlocutory appeal (Doc. 120-1, 2) is denied.

ENTER:

Dated: August 16, 2001

REBECCA R. PALLMEYER
United States District Judge